IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA,

v.

DWAYNE KEITH HOOD,

      Defendant.

CRIMINAL CASE NO.
1:14-CR-215-SCJ-LTW

## MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION AND ORDER CERTIFYING CASE READY FOR TRIAL

Pending before this Court is Defendant Dwayne Keith Hood's Motion to Suppress and Particularized Motion to Suppress (together, the "Motions to Suppress"). (Docket Entries [16, 19]). Defendant also seeks a <u>Franks</u> hearing on his Motions. The Government has filed a response in opposition to Defendant's Motions. (Docket Entry [22]).

Having considered Defendant's Motions, and for the reasons set forth below, this Court finds Defendant has failed to meet the high threshold necessary to obtain a <u>Franks</u> hearing, and further **RECOMMENDS** that Defendant's Motions to Suppress be **DENIED**. (Docket Entries [16, 19]).

## BACKGROUND

### I.    The Search Warrant

On February 1, 2013, Jeff Adkins, an Inspector with the United States Postal Inspection Service ("USPIS"), presented an Application and Affidavit for Search Warrant[1] (Ex. 1, attached) ("Application" or "Appl.") to a United States Magistrate Judge seeking a warrant to search Defendant's residence, located at 1254 Opine Lane SE, Lawrenceville, Georgia. (Id. ¶ 2). Inspector Adkins asserted that he had probable cause to believe that this residence held evidence of the receipt and possession of child pornography in violation of 18 U.S.C. § § 2252(a)(2), (a)(4), and (a)(5)(B). (Id. ¶ 4).[2] Inspector Adkins based his assertion on the following information:

In October 2010, the USPIS and foreign law enforcement began an investigation

---

[1] Neither party filed a copy of Inspector Adkins' Application and Affidavit for Search Warrant. The Court's staff requested a copy from the United States Attorneys' Office. The undersigned has attached a copy of the Application and Affidavit for Search Warrant to this Report and Recommendation. (See Ex. 1, attached).

[2] Introductory paragraphs of the Affidavit provided the Court with background information about Inspector Adkins' training and experience and where he obtained the information contained therein. (Appl. ¶¶ 1, 3).

2

into a movie production company that operated an internet website that offered products for sale that would be delivered through the United States Postal Service ("USPS") and the internet. (Appl. ¶ 5). This company was located outside of the United States and had received several complaints from members of the public regarding the sale of child pornography. (Id.). This company (hereinafter "Foreign Company") was the subject of more than twenty complaints to the National Center for Missing and Exploited Children CyberTips. (Id.). CyberTips stated that the Foreign Company was offering various videos for sale that contained child pornography. (Id.).

Law enforcement (i.e., USPIS and foreign law enforcement) accessed the website of the Foreign Company and were able to view previews of movies, summaries of movies, and ordering information. (Appl. ¶ 6). The USPIS made undercover purchases of videos from the Foreign Company in February and April 2011. (Id.). The USPIS purchases of child pornography from the Foreign Company were made in Tennessee via the Foreign Company's online ordering system. (Id.). Each purchase was made using a credit card. (Id.). A trace on the Foreign Company's website shows that the website was run from a location outside of the United States. (Id.). E-Mails regarding the order were received from an internet protocol, or IP address, outside the United States. (Id.). Based upon the USPIS investigation, along with a review of USPS

3

records, the videos from the undercover orders were transferred to a shipping facility in New York state for fulfillment. (Id.). The orders were then shipped via USPS Priority Mail to a post office box in Tennessee. (Id.). An investigation ensued, which culminated in the execution of a search warrant at the Foreign Company's business address. (Appl.¶ 7). The search warrant was executed on May 1, 2011. (Id.). During the execution of that search warrant, law enforcement officers seized hundreds of DVD containing movies and photos, as well as computers that contained movies and photos. (Appl.¶ 8). Law enforcement found that these DVD movies and photos were being shipped to customers who had ordered them. (Id.). Agents also located USPS Priority Mail packaging and shipping labels to addresses that corresponded with customer records. (Id.).

The Foreign Company's website offered hundreds of movies for sale, some of which were commercial movies. (Appl.¶ 9). The producer retained copies of most of the produced movies on computer systems at the business. (Id.). Most of the commercial movies featured a boy in them, but some may not have had any nudity. (Id.). Most of the movies that were for sale (produced by or for the Foreign Company's website operator) contained child nudity. (Id.). Law enforcement reviewed the movies and determined that many of them contained child pornography. (Id.).

4

During the execution of the search warrant, law enforcement seized the Foreign Company's customer database. (Appl. ¶ 10). That database contained order and purchase records, including information on each transaction and invoice. (Id.). The Defendant, Dwayne Hood, of 1254 Opine Lane SE, Lawrenceville, Georgia, was determined to be a customer. (Id. at ¶ 11). A review of the records revealed that Defendant had twenty-three unique transactions between July 13, 2010, and April 29, 2011, in which approximately eighty-one DVDs were ordered, totaling $1,700.00. (Id.). All the transactions showed a billing and shipping address of 1254 Opine Lane SE, Lawrenceville, Georgia 30045, and a telephone number of 770–962–8766. (Id.). The transactions also showed a confirmation email address of dwaynehood1254@comcast.net. (Id.).

A sample of the movies and other materials Defendant ordered between July 13, 2010, and April 29, 2011, are the following:

Date Ordered:    July 13, 2010
Product Name:   *70222 Boys of Eurpopa Vol 2 (2010)* DVD [3 disc]
Price:          $41.40

Date Ordered:    December 4, 2010
Product Name:   *Igor x3 Portfolio (2010)* DVD
Price:          $10.95

AO 72A
(Rev.8/82)

Date Ordered:    December 4, 2010
Product Name:    *Spring Portfolio (2010)* DVD
Price:           $9.95

Date Ordered:    December 4, 2010
Product Name:    *Vladik's Spring Break (2007)* DVD
Price:           $29.95

Date Ordered:    April 15, 2011
Product Name:    *Raw Rewind Vol. 3 (2011)* (DVD) [2-disc]
Price:           $23.95

Date Ordered:    April 15, 2011
Product Name:    *Cool Coosacks (2011)* DVD [2-disc]
Price:           $18.95

Date Ordered:    April 29, 2011
Product Name:    *Capital Fellows (2004)* DVD
Price:           $22.95

Date Ordered:    April 29, 2011
Product Name:    *Headlock (2005)* DVD
Price:           $23.95

(Appl. ¶¶ 13-16).

Inspector Adkins, a federal law enforcement officer with extensive experience investigating child pornography matters, reviewed two of the DVD movies, and digital pictures from them, that Defendant ordered. (Appl. ¶ 17). Inspector Adkins reviewed "*Vladik's Spring Break* (2007)" and "*Raw Rewind Vol. 3 (2011)*". (Id.). According to Inspector Adkins, both of these videos focus on boys between the ages of eight and

6

fourteen. (Id.). Both of the movies contain large amounts of footage depicting naked boys in this age range. (Id.). Although there is no sex in the movies, the focus of the movies is naked young boys, either alone or interacting with other naked young boys. (Id.).

More specifically, according to Inspector Adkins, "*Vladik's Spring Break (2007)*" depicts naked boys inside an apartment or in an indoor swimming pool area. (Appl. ¶ 18). There is constant footage of the boys naked and interacting with one another, including the boys bent over a tub with four of the boys' anuses exposed in the air. (Id.). Similarly, "*Raw Rewind Vol. 2 (2011)*" depicts naked boys in a sauna, steam room, and other areas, in various poses, interacting with each other with numerous shots where the focus is on the boys' exposed genitals. (Id.).

In March 2012, law enforcement traced the above orders to Defendant's home. (Appl. ¶¶ 19–26). Based on his knowledge, experience, and training in child pornography investigations, and the training and experience of other law enforcement officers with whom he had discussions, Inspector Adkins averred that there are certain characteristics common to individuals involved in receipt and attempted receipt of child pornography, which include, inter alia, the following:

> b. Those who receive and attempt to receive child pornography may collect sexually explicit or suggestive materials, in a variety of media,

AO 72A
(Rev.8/82)

including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media.   Such individuals oftentimes use these materials for their own sexual arousal and gratification.   Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

c. Those who receive and attempt to receive child pornography often possess and maintain their "hard copies" of child pornographic material, that is, their pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of their home or some other secure location. These individuals typically retain pictures, films, negatives, magazines, correspondence, recordings, mailing lists, child erotica, and videotapes for many years.

d. Likewise, those who receive and attempt to receive child pornography often maintain their collections that are in a digital or electronic format in a safe, secure and private environment, such as a computer and surrounding area. These collections are often maintained for several years and are kept close by, usually at the individual's residence, to enable the collector to view the collection, which is valued highly.

(Appl. ¶ 28).[3]

Based on the foregoing, Inspector Adkins submitted that there was probable cause to believe that evidence, fruits, and instrumentalities of criminal offenses in violation of 18 U.S.C. §§ 2252 (a)(2), (a)(4), and 2252A(a)(2), (a)(5)(B) may be located at

---

[3] Inspector Adkins also provided the Court with background information about computers, digital cameras, and child pornography (see Appl. ¶¶ 29–36), and specifics about the search and seizure of computer systems and other media (id. ¶¶ 37-39).

8

Defendant's residence (described in Attachment A to the Application as a multi-story dwelling located at 1253 Opie Lane in Lawrenceville, Georgia 30045, and including the premises, its curtilage and outbuilding, vehicles, and any computer or computer peripheral located on, about, or within property to be searched).   (Appl. ¶ 40). Inspector Adkins further requested that the attached warrant be issued authorizing the search and seizure of items listed in Attachment B.  (Appl. ¶ 41).  That multi-page list of "items to be searched for and seized" included, inter alia, evidence of child pornography and files containing images of child pornography in any form wherever it may be stored or found, including in any computer, books or magazines, or motion pictures.  (See Appl., Attach. B).

Inspector Adkins presented the aforementioned Application and Affidavit for Search Warrant to a United States Magistrate Judge on February 1, 2012.  (See Ex. 1, attached).  The Magistrate Judge does not appear to have reviewed any images from the DVD movies or photo DVD but relied instead on the descriptions that Inspector Adkins provided in his Affidavit.  The Application for the Search Warrant indicates that Inspector Adkins was placed under oath, and swore to the truth of the facts contained in his Affidavit.  (Id.).  Inspector Adkins and the issuing Magistrate Judge both signed the Application and the search warrant was issued.  (Id.).

9

According to information contained in the Government's Response, agents executed the search warrant at Defendant's residence on February 7, 2013.[4] (Gov't Resp. 11–13).

## II.   THE INDICTMENT

On June 10, 2004, the grand jury entered a two count indictment against Defendant Dwanye Keith Hood. Count One charges that on or about July 13, 2010, and continuing until on or about April 29, 2011, in the Northern District of Georgia, Defendant knowingly received one or more visual depictions of a minor engaging in sexually explicit conduct in violation of 18 U.S.C. § 2256(2), said depictions having been (a) produced using minors engaged in sexually explicit conduct, and (b) shipped and transported in interstate and foreign commerce, by any means, including through the United States Postal Service, all in violation of Title 18, United States Code, Sections 2252(a)(2) and 2252(b)(1). Count Two charges that on or about February 7, 2013, in the Northern District of Georgia, Defendant knowingly possessed one or more visual depictions of minors engaged in sexually explicit conduct as defined in Title 18, United

---

[4] Defendant asserts that the search pursuant to the warrant occurred in January 2013. (Docket Entries [16, 23] at ¶ 1). Because the search warrant is dated February 1, 2013, the Court assumes Defendant mistakenly referred to January as the date of the search instead of February 2013. (See Ex. 1, Application and Affidavit for Search Warrant).

10

States Code, Section 2256(2), said depictions (a) having been produced using minors engaging in sexually explicit conduct, (b) involving at least one prepubescent minor and at least one minor who had not attained 12 years of age, and (c) having been shipped and transported in and affecting interstate and foreign commerce, by any means including by computer, in violation of Title 18, United States Code, Sections 2252(a)(4)(B) and 2252(b)(2).

## LEGAL ANALYSIS

In Defendant's Motions to Suppress, Defendant contends that the arresting agency lacked probable cause for the search warrant, and that the affidavit filed in support of the search warrant lacked sufficient information to issue said search warrant. In response, the Government contends that Defendant failed to show that the agent who swore out the search warrant, Postal Inspector Jeffrey Adkins, made a material misrepresentation in the affidavit. In his Reply Brief, Defendant contends that he is entitled to a Franks hearing to determine whether the depictions that the Government relied on to establish probable cause are in fact illegal to possess or receive. Without a hearing, the Defendant argues, he has no mechanism to challenge the probable cause for the issuance of the warrants.

## A.     Probable Cause

11

AO 72A
(Rev.8/82)

This Court finds Inspector Adkins' Affidavit provided the Magistrate Judge with sufficient probable cause to issue the warrant on February 1, 2013.  Thus, Defendant's argument that the arresting agency lacked probable cause for the search warrant, and that the affidavit filed in support of the search warrant lacked sufficient information to issue said search warrant, is without merit.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.  In attempting to ensure that search warrant affidavits comply with the Fourth Amendment's prohibition against unreasonable searches and seizures resulting from warrants issued without probable cause, the issuing magistrate "is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit . . . , there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983); United States v. Miller, 24 F.3d 1357, 1361 (1994).  "[P]robable cause deals 'with probabilities.  These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" Gates, 462 U.S. at 241; Miller, 24 F.3d at 1361.  "Courts reviewing the legitimacy of search warrants should not interpret supporting affidavits in a hypertechnical manner;

12

rather, a realistic and commonsense approach should be employed so as to encourage recourse to the warrant process and to promote the high level of deference traditionally given to magistrates in their probable cause determinations." Gates, 462 U.S. at 241; Miller, 24 F.3d at 1361.  Probable cause to support a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location.  United States v. Brundidge, 170 F.3d 1350, 1352 (11th Cir. 1999).  Additionally, "[r]easonable minds frequently may differ on the question whether a particular affidavit establishes probable cause, and the [Eleventh Circuit] ha[s] thus concluded that the preference for warrants is most appropriately effectuated by according 'great deference' to a magistrate's determination."  United States v. Leon, 468 U.S. 897, 914 (1984).

Here, Defendant appears to contend that Inspector Adkins' descriptions of child pornography, provided in his Affidavit, were not sufficient to satisfy the statutory definition of child pornography.  Having reviewed Inspector Adkins' Affidavit in conjunction with a review of the applicable child pornography statutes, the undersigned finds Defendant's argument is without merit.  As for the two DVD movies and digital pictures from them that Inspector Akins personally reviewed, Inspector Akins' description of the content of the movies could be found by a jury to

13

meet the definition of child pornography.

> Title 18, United States Code, Section 2256(8) defines "child pornography" as:
>
> any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where-
>
> (A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct;
>
> (B) such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or
>
> (C) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct.

18 U.S.C. § 2256(8). In turn, the statute defines "sexually explicit conduct" as actual or simulated:

> (i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;
>
> (ii) bestiality;
>
> (iii) masturbation;
>
> (iv) sadistic or masochistic abuse; or
>
> (v) lascivious exhibition of the genitals or pubic area of any person.

18 U.S.C. § 2256(2)(A).

14

In paragraphs 17 and 18 of his Affidavit, Inspector Adkins describes the content of the two DVD movies, *"Vladik's Spring Break (2007)* and *"Raw Rewind, Vol. 3 (2011)"*. According to Inspector Adkins, both movies focus on boys who appear to be between eight and fourteen years old, and both movies contain large amounts of footage depicting the boys in this age range naked. (Appl. ¶ 17). By way of examples, Inspector Akins stated that *"Vladik's Spring Break (2007)"* depicted naked young boys inside an apartment or in an indoor pool area, interacting with one another, and included the boys bent over a tub with four of the boys' naked anuses exposed in the air. (Appl. ¶ 18). Similarly, the *"Raw Rewind, Vol. 3 (2011)"* DVD movie depicts naked boy in a sauna, steam room, and other areas, in various poses, interacting with each other with numerous shots where the focus is on the boys' naked genitals. (Id.).

Given the description of the images found in Inspector Adkins' Affidavit, the governing section is 18 U.S.C. § 2256(2)(A)(v), i.e., the "lascivious exhibition of the genitals or pubic area." The Eleventh Circuit has previously defined a "lascivious exhibition" as one that potentially "excit[es] sexual desires" or is "salacious." United States v. Williams, 444 F.3d 1286, 1299 (11th Cir . 2006), rev'd on other grounds, 553 U.S. 285 (2008). Thus, while the trier of fact reviews actual images to determine

15

lasciviousness,[5] judges evaluating probable cause must work with probabilities, often without access to the images. <u>United States v. Hill</u>, 322 F. Supp. 2d 1081, 1087 n.9. (C.D. Cal. 2004). "There is at least probable cause to conclude an image is lascivious when it exhibits a minor's bare genitalia, and weak or ambiguous indicators of an innocent purpose do not suggest otherwise." <u>Id.</u> In this case, the movies and photos at issue exhibited genitalia of young boys. Moreover, there were no indicators of innocent purpose. The pictures do not appear to be part of a medical text and served no educational purpose. As described by Inspector Adkins, the boys in the videos and photos were filmed/photographed for the apparent purpose of displaying their genitals to the viewer. Therefore, based on the foregoing, the Magistrate Judge had a substantial basis for concluding that there was probable cause for the issuance of a warrant authorizing the search of Defendant's home and the seizure of evidence of child pornography. <u>See</u> <u>Gates</u>, 462 U.S. at 238-39; <u>see also</u> <u>Hill</u>, 322 F. Supp. 2d at 1087.

**B.   Franks Hearing**

Defendant seeks a <u>Franks</u> hearing to determine whether the depictions that the Government relied on to establish probable cause for the search warrant are in fact illegal to receive or possess. This Court has already determined that the information

---

[5] <u>See</u> <u>United States v. Grzybowicz</u>, 747 F.3d 1296, 1306 (11th Cir. 2014).

16

provided in Inspector Adkins' Affidavit was sufficient for the Court to issue a search warrant. Therefore, without more than conclusory statements and a mere desire to cross-examine, Defendant's motion for an evidentiary hearing falls woefully short of meeting the requirements for a <u>Franks</u> hearing.

In <u>Franks v. Delaware</u>, 438 U.S. 154, 171 (1978), the Supreme Court held that a search warrant is void under the Fourth Amendment if the affidavit supporting the affidavit contains deliberate falsity or reckless disregard for the truth. <u>Id.</u> Entitlement to a <u>Franks</u> hearing requires a defendant to make a substantial preliminary showing establishing that the affiant deliberately or recklessly included a false statement or failed to include material information in the warrant affidavit. <u>Franks</u>, 438 U.S. at 155-56, 171; <u>United States v. Gray</u>, Nos. 12-10990, 12-11856, 2013 WL 6038485, at *7 (11th Cir. 2013). The burden is upon the defendant to show that, absent misrepresentations or omissions, the warrant lacks probable cause. <u>United States v. Novaton</u>, 271 F.3d 968, 986-87 (11th Cir. 2001).

In this case, Defendant failed to carrying his burden to show that there was any misrepresentation or omission in the Affidavit supporting the search warrant. Specifically, Defendant failed to allege or make a preliminary showing that Inspector Adkins deliberately or recklessly included a false statement in his affidavit or that he

17

omitted material information from his Affidavit.   Accordingly, Defendant has not demonstrated his entitlement to a <u>Franks</u> hearing.  <u>See</u> <u>United States v. Wilson</u>, 314 F. App'x 239, 243-44 (11th Cir. 2009) (rejecting defendant's argument that he was entitled to a <u>Franks</u> hearing to show that the investigation could proceed with the confidential informant and without wiretaps because he failed to demonstrate a substantial preliminary showing that a false statement was contained in the affidavit); <u>United States v. Degaule</u>, 797 F. Supp. 2d 1332, 1361 n.23 (N.D. Ga. 2011) (rejecting defendant's request for a <u>Franks</u> hearing "to determine the full extent of the information gathered from the cooperating individuals in [the] case and the extent and potential value of the information and evidence that could have been realized had the conventional investigation continued" because the defendant did not make a substantial preliminary showing that a false statement or omission, intentionally or with reckless disregard for the truth, was included by the affiant in the warrant affidavit). .

## CONCLUSION

For the foregoing reasons, the undersigned **RECOMMENDS** that Defendant's Motions to Suppress be **DENIED**.  (Docket Entries [16, 19]).   There are no further motions or problems pending before the undersigned to prevent the scheduling of this case for trial.  Therefore, this action is **CERTIFIED READY FOR TRIAL**.

18

AO 72A
(Rev.8/82)

**SO ORDERED, REPORTED AND RECOMMENDED** this ___5th___ day of

February, 2015.

/s/ Linda T. Walker

LINDA T. WALKER

UNITED STATES MAGISTRATE JUDGE
